UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARNI M. GUY, Individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CASAL INSTITUTE OF NEVADA, LLC dba AVEDA INSTITUTE LAS VEGAS, ARTHUR J. PETRIE, JOHN GRONVALL, and THOMAS CIARNELLO,<br><br>Defendants. | Case No. 2:13-cv-02263-RFB-GWF<br><br>**ORDER** |

## I.     INTRODUCTION

Before the Court are Defendant's Motions for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. ECF Nos. 132, 133. This case arises from Defendant Aveda's failure to pay Plaintiffs, Aveda students and alleged employees under the Fair Labor Standards Act (FLSA). For the reasons stated below the Court grants Plaintiffs' Motion and denies Defendants' Motion.

## II.    BACKGROUND

Plaintiffs filed their Complaint on December 11, 2013. ECF No. 1.

On April 4, 2014, Plaintiffs moved to circulate notice to potential collective action members under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). ECF No. 20. On May 12, 2014, the Court issued its Order granting Plaintiffs' motion. ECF No. 30. In this Order, the Court granted Plaintiffs 90 days to send notice to potential class action members to participate in the action.

Defendant filed its Motion for Summary Judgment on January 13, 2016. ECF No. 132. Plaintiffs filed their Motion for Summary Judgment on the same day. ECF No. 133.

The Court held a hearing on July 28, 2016 to discuss outstanding motions. The Court granted Plaintiffs' Motion to File Portions of Exhibit B. ECF No. 141.

**III.   LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

**IV.   UNDISPUTED FACTS**

The Court summarizes what it finds to be the relevant undisputed facts below.

**A.  Aveda and Cosmetology Schools in Nevada**

To obtain a cosmetology license in Nevada, students must complete 1800 clock hours in a licensed school of cosmetology, pass a state cosmetology licensing examination, and pay a licensing fee. NRS 644.200(5)(a). The Nevada cosmetology examination consists of practical demonstrations and written and oral tests evaluating students on a variety of skills and procedures, including haircutting, hair styling, nail technology, chemical treatments, the use of mechanical tools, "[i]nfection control and safety," and "antisepsis, sterilization and sanitation." NAC 644.051; NRS 644.240.

The Aveda Institute Las Vegas (Aveda) is a licensed and state accredited cosmetology school in Las Vegas. Aveda is a profit making institution ("proprietary institution of higher education") participating in Federal Student Aid programs under Title IV of the Higher Education Act of 1965. Plaintiffs are or were Aveda cosmetology students.

Students of Aveda are required to receive credit hours in both theory instruction and clinic instruction as part of Aveda's curriculum. After completing the initial 300 hours of theory, Aveda students proceed to Advance I, where they are allowed to cut hair. Students then proceed to Advanced II and III, where they gradually are permitted to practice additional services. Students in the Advanced I, II, and III levels continue to receive instruction in theory as well. The final level is called Salon Life, which occurs once the student has exceeded his/her requirement for theory.

**B.  Aveda's Clinical Salon**

Aveda operates a clinical salon where it charges customers for services performed by its students. The clinical salon is open to the public. Aveda publishes on its website a "Salon Services" menu with the various services the clinical salon offers.

At the clinical salon, paid instructors assist, correct, and step-in to work on guests. During the time of Guy's attendance at the school, in 2013, the ratio of students to instructors was 7.25 students to 1 instructor.

When customers arrive at the clinical salon, the reservationist assigns the customer to a zone and station in the salon based upon the type of service requested. Aveda does not assign students to customers by matching a customer's requested service to a student who needs or requests more experience providing such service. Rather, Aveda assigns customers to the first available student by "rotation." As a result, students may perform repetitive tasks on paying customers. Aveda does not permit students to bring in volunteer customers to perform services on. Aveda students must perform the services they are assigned to.

After the customer is taken back to the work station, the student, with an instructor present, makes a recommendation to the customer regarding the technical aspect of the service. The instructor confirms that there is agreement as to what the client wants. The instructor then leaves the student to perform the desired service. The instructor returns briefly at some point during the

service and again after the service is complete. The instructor does not stand and supervise students while they administer the service; rather, the instructor spends a few to several minutes with a student while she is performing a service that can take several hours long. After the service is complete, the student and the instructor have a discussion about the service and the student is graded.

Students do not spend the entirety of their assigned salon hours administering services to paying customers. Aveda does not guarantee that students will spend a specific number of hours performing services during their assigned salon hours. Students can spend long periods of time waiting to perform services while at the salon. Students may work on mannequins or view educational videos when they are not performing services on paying customers.

In addition to performing services on paying customers, the students are required to perform janitorial, laundry, and stockroom ("dispensary") tasks on a consistent and routine basis. While Aveda employs a cleaning staff to clean bathrooms, students are required to clean work stations and sweet up cut hair regularly.

## V.   DISCUSSION

### A.  Cosmetology Students Can Be Employees Under the FLSA

#### *1. Legal Standard*

The FLSA mandates that every employer pay a minimum wage "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA defines "employer" to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" 29 U.S.C. § 203(d). "[T]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009). "Employee" is defined under the FLSA, with certain exceptions, as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is defined as including "to suffer or permit to work." 29 U.S.C. § 203(g). "The definition

'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages." Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947). Nevertheless, the FLSA "define[s] the verb 'employ' expansively," thereby "stretch[ing] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).

"The determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity. The touchstone is the 'economic reality' of the relationship. " Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009) (citation omitted) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)). In a 2014 opinion, the Nevada Supreme Court adopted the FLSA's "economic realities" test to determine whether an employment relationship exists under Nevada law. Terry v. Sapphire Gentlemen's Club, 336 P.3d 951, 953 (Nev. 2014). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Boucher, 572 F.3d at 1091 (internal quotation marks omitted).

In administering the economic reality test, courts are to consider the totality of the circumstances of the relationship, including whether the alleged employer: 1) has the power to hire and fire the employees; 2) supervises and controls employee work schedules or conditions of employment; 3) determines the rate and method of payment; and 4) maintains employment records. Hale v. State of Ariz., 993 F.2d 1387, 1394 (9th Cir. 1993). However, these factors are neither exclusive nor is any one of the factors necessary. "While these factors provide a useful framework for analysis . . . they are not etched in stone and will not be blindly applied." Hale, 993 F.2d at 1394. These factors may be particularly inapplicable in a situation where the relevant question is not which entity is the employer, but whether the plaintiff can be said to be "employed" at all. Hale, 993 F.2d at 1394-95.

The Ninth Circuit also considers whether there was an express or implied agreement for compensation. Williams v. Strickland, 87 F.3d 1064, 1067 (9th Cir. 1996). While FLSA rights cannot be waived, the existence of a signed statement saying that an individual is not an employee of an entity can "indicate[ ] that there was no express agreement for compensation." Williams, 87 F.3d at 1067.

The first, and hallmark, Supreme Court case regarding who qualifies as an employee under the FLSA is Walling, in which the Court found that railroad trainees were not employees under the Act, which held: "Without doubt the [FLSA] covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." Walling v. Portland Terminal Co., 330 U.S. 148, 151 (1947). In Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290 (1985), the Supreme Court found that workers engaged in the commercial activities of a religious foundation were employees under the FLSA. The Court distinguished its holding from Walling, stating "[t]he trainees were in much the same position as students in a school. Considering that the trainees' employment did not contemplate . . . compensation, and accepting the findings that the railroads received no immediate advantage from any work done by the trainees, the Court ruled that the trainees did not fall within the definition of employee." 471 U.S. at 299-300 (internal citations and quotations omitted). Further, in determining whether a student is an employee under the FLSA, district courts in the Ninth Circuit have considered whether a school subordinates its educational purposes to its business function of generating revenue. See Benjamin v. B & H Educ., Inc., No. 13-CV-04993-VC, 2015 WL 6164891, at *1 (N.D. Cal. Oct. 16, 2015) (drawing on Walling, the court found that "in the context of a for-profit school's clinical education program, this means a court should inquire whether a school's efforts to make money from the clinic relegated the educational function of the clinic to a secondary status. If a reasonable factfinder could go either way on that question, the court should deny summary judgment and allow a jury to decide whether the students were actually employees during their clinical work.").

/ / /

/ / /

/ / /

*2. Discussion*

Defendant argues that, as a matter of law, Plaintiffs' FLSA claims, and therefore Plaintiffs' related Nevada law claim, must fail. Defendant cites to several district court cases in and outside the Ninth Circuit to argue generally that under the economic realities test, cosmetology students cannot be employees under the FLSA.

The Court finds that the FLSA does not foreclose the possibility that cosmetology students who work in a clinical salon performing services for paying customers as a part of their certification process, may be employees of the institutes where they are enrolled. The Court finds that "employee" is not clearly defined under the FLSA, but that the FLSA "define[s] the verb 'employ' expansively," thereby "stretch[ing] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (U.S. 1992).

The Court also finds that the question of whether there is an employer/employee relationship is a fact-intensive question. "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Boucher, 572 F.3d at 1091 (internal quotation marks omitted). This is particularly true of the "economic realities" test, which applies here. In administering the economic reality test, courts are to consider the totality of the circumstances of the relationship, including whether the alleged employer: has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." Hale v. State of Ariz., 993 F.2d 1387, 1394 (9th Cir. 1993). Therefore, the Court does not find that Plaintiffs cannot as a matter of law, establish that they were employees under the FLSA merely because they were students enrolled at Aveda.

**B. The Court Finds that Under FLSA, Plaintiffs Were Employees of Aveda**

Using the economic realities test laid out in Walling, the Court finds that the Plaintiffs were employees under the FLSA as a matter of law. Therefore the Court grants partial summary judgment in favor of the Plaintiffs and denies Defendant's Motion for the reasons stated below.

The Court again notes that the FLSA "define[s] the verb 'employ' expansively," thereby "stretch[ing] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). Therefore, as business models and even educational institutions change and evolve, the courts should determine whether an employment relationship exists not "based on isolated factors but rather upon the circumstances of the whole activity." Boucher, 572 F.3d at 1091.

In this case, the Court finds that two main factors weigh in favor of finding that Plaintiffs are employees under the FLSA. First, the Court finds that Aveda treated its students as employees: students alone performed cosmetology services to paying customers with limited supervision by Aveda educators, who spent as little as five minutes with students during the course of an hours-long procedure. See Pl.'s Ex. L ¶ 5. Therefore this case is distinct from Walling, where the plaintiff trainees were closely scrutinized by the regular brakemen-employees, who stood immediately by to supervise whatever the trainees did. 330 U.S. at 149. In fact, the Court noted that the Walling trainees did "not expedite the company business, but may, and sometimes [did], actually impede and retard it." Id. at 150. In contrast, Aveda supervisors did not stand by to oversee the students, who performed the cosmetic services with little supervision; at best, supervisors consulted with students: 1) just before students alone administered the cosmetic services; 2) briefly during the performance of the service; and 3) after the student had completed the service. Moreover, the students did not impede or retard the company business; they comprised the workforce of the business. Unlike in Walling, the instructors at Aveda could not have completed all of the work or performed all of the services that the students did.

Second, employing the application of the economic reality analysis to the "subordination model" articulated in Benjamin, the Court finds that Aveda subordinated the interests of its students' education to its own interest in providing services to paying customers. No. 13-CV-04993-VC, 2015 WL 6164891. For example, the Court finds that Aveda required that students regularly engage in janitorial and menial tasks. While Defendant argues that knowledge of such tasks are required to pass the cosmetology exam and are a part of a cosmetologist's daily routine,

the Court is not persuaded that requiring a student to perform these tasks repetitively is necessary in order for a student to effectively learn these tasks for the purposes of the exam. Rather, that students were required to do these tasks suggests that the school subordinated students' interests to that of its own revenue-generating business by having unpaid janitorial labor offset its cleaning expenses. The Court further finds that the lack of significant or continual oversight of students by supervisors further illustrates the subordination of the school's educational purposes. The Court also finds that the school's refusal to allow students to solicit unpaid volunteers upon which students could practice their cosmetology skills, opting instead for paid customers, is further proof of subordination. The school further failed to assign students to customers seeking specific procedures that students desired experience performing; for example, an aspiring colorist who had not yet learned how to color hair was not necessarily assigned to a customer seeking such treatment. All of these facts demonstrate the business interests of Aveda operating the salon were dominant in the relationship between the "students" and the "school."

Moreover, Aveda could not proffer significant or compelling evidence to establish that its business model was not predicated on unpaid student labor. At the hearing in this case Aveda conceded that it could not explain with facts or figures why its specific model was the best model for operating a cosmetology school with a salon focused on the needs or immediate advantage of the students. While Aveda suggested at the hearing that it could not and cannot operate a salon without charging the public in the way that it does, or requiring the students to perform in the manner that they do in its school, counsel offered no evidence or business model analysis to support such a conclusion. For example, Aveda could not explain why it could have not raised tuition to allow for free services to the public or why it prohibited students from bringing in volunteers to receive services for free. In short, Aveda has offered no independent business model analysis to support its assertion that its mode of operation was the best model for operating a school whose focus was on education rather than a school being operated as a business whose business interest where superior to the educational interests of the students. Indeed, the facts noted above all support the later proposition.

1     The Court is unpersuaded by Defendant's arguments as to why Plaintiffs are not employees
2 under the FLSA. For example, Defendant argues that Guy enrolled in the school as a student with
3 no express expectation of payment or future employment. However, in the context of this case,
4 this is not the appropriate test to determine whether an individual is an employee under the FLSA.
5 The Court has found in this case the appropriate inquiry is an analysis of the overall "economic
6 reality" of the relationship and the prioritization of the business interests versus the student's
7 educational interests. Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009) (citation omitted).

8     Defendant argues that Plaintiff paid tuition for an education in cosmetology to qualify for
9 licensure, which would have been higher but for the salon revenue; therefore, they were conferred
10 an "immediate advantage." Alamo Found., 471 U.S. at 299-300  ("Considering that the trainees'
11 employment did not contemplate . . . compensation, and accepting the findings that the railroads
12 received no immediate advantage from any work done by the trainees, the Court ruled that the
13 trainees did not fall within the definition of employee.") (internal citations omitted). However, as
14 noted above, Defendant does not provide any evidence as to the amount by which the salon's
15 revenue offset or subsidized students' tuition, or argued that it would be financially unable to
16 operate as a school but for the salon. Nor has Defendant argued how charging only for the cost of
17 the supplies, rent, and maintenance of the salon would have been financially unworkable.

18     Defendant further argues that its students' activities resulted in the development of skill
19 and academic credit which helped qualify them for licensure. The relevant question, however, is
20 whether the students' educational goals were subordinated to Defendant's business interests in
21 generating revenue.  The Court rejects the Defendant's attempt to turn the legal standard on its
22 head.  The question is not whether these students learned anything while working for the
23 "business;" rather, the determinative legal inquiry is whether the students' education and
24 educational interests was the dominant organizing principle of the activity in which they
25 participated.

26     Last, Defendant argues that its students did not entirely displace Aveda's regular
27 employees.  The Court also rejects this argument.  Again, the legal test is not whether students
28 completely or entirely displaced the work of other Aveda employees.  It is sufficient that in this

case the students performed work that would have been done by paid employees and that Aveda gained an ongoing financial benefit from students repeatedly performing such tasks. And, as the Court has found, the students did not receive an educational benefit from the excessive repetition of these menial tasks. This excessive repetition only benefited Aveda. Finally, as the students were primarily, if not solely, performing the cosmetology services offered—as opposed to Defendant's supervisors—they functioned as the clinic's employees for FLSA purposes.

Therefore the Court grants Plaintiffs' Motion and denies Defendant's. The Court does not address Plaintiffs' alternative arguments as to why they are entitled to be found employees under the FLSA as a matter of law, such as the "unfair economic advantage" argument.

## VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is GRANTED. ECF No. 133.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is DENIED. ECF No. 132.

DATED: August 16, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**